597 A.2d 432

Sharon M. RITCHIE

v.

Virginia L. DONNELLY.

No. 132, Sept. Term, 1989.

Court of Appeals of Maryland.

Oct. 29, 1991.

**348**

Glen M. Fallin, Ellicott City, for petitioner, cross respondent.

Evelyn O. Cannon, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen., Stuart M. Nathan, Asst. Atty. Gen., all on brief), Peter E. Keith, argued (Gallagher, Evelius & Jones, on brief), Baltimore, for respondent, cross petitioner.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and HARRY A. COLE * and WILLIAM H. ADKINS **, Associate Judges of the Court of Appeals (retired).

---

\* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

\*\* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

ELDRIDGE, Judge.

This case concerns alleged violations of the United States Constitution and of the Maryland Declaration of Rights in connection with the discharge of the plaintiff, a female deputy sheriff, from her employment with the Howard County Sheriff's Office.

## I.

As the Circuit Court for Howard County dismissed the plaintiff's complaint, the facts for purposes of this appeal are those alleged by the plaintiff. On April 30, 1986, Sharon M. Ritchie was discharged from her at will public employment as a deputy sheriff in the Howard County Sheriff's Office. The discharge was effected by the defendant, Virginia L. Donnelly, then Sheriff of Howard County. The background was that, in April 1986, the Sheriff's Office changed its standard firearm from a .38 caliber revolver to a nine millimeter Beretta automatic. The plaintiff had previously qualified for firearm use with the .38 caliber revolver. After one day of classroom training, Ritchie discovered that she could not fire the new weapon with one hand. Her instructor suggested she hold the weapon in a different way, but Ritchie remained unable to fire the weapon that day. On April 29, 1986, the defendant placed the plaintiff on administrative leave, explaining to the plaintiff that she should never have been qualified to fire a weapon and that the employee who qualified her with the .38 caliber revolver was facing severe disciplinary action. The plaintiff's termination followed shortly thereafter.

The complaint alleged that similarly situated male employees were not discharged for failing to qualify with the Office's standard weapon, that male employees were permitted to carry weapons other than the official firearm, and that male employees were afforded adequate instruction concerning the use of the Beretta. The plaintiff also claimed that, with additional practice, she became completely proficient in the firing and operation of a nine millimeter

Beretta. The complaint further alleged that the plaintiff's discharge was effected with malice, hate and ill-will. The complaint went on to state that the defendant had disseminated information concerning the discharge of the plaintiff to the news media and that the defendant had falsely stated to other members of the Sheriff's Office that the plaintiff qualified in the original firearms test because she performed sexual favors for the employee administering the test.

Ritchie sought compensatory and punitive damages as well as a writ of mandamus to compel her reinstatement and to compel the rehabilitation of her work record. The original complaint contained counts alleging sexual discrimination, abusive discharge, defamation, intentional infliction of emotional distress, and violations of Articles 24 and 46 of the Maryland Declaration of Rights. The complaint was later amended to assert violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States and a cause of action under 42 U.S.C. § 1983.[1] Virginia L. Donnelly was named as the defendant "individually and in her capacity as Sheriff of Howard County, Maryland." Virginia Donnelly was the only defendant. Neither the State of Maryland nor Howard County was sued.

Donnelly was represented by two different lawyers in the circuit court, before the Court of Special Appeals and before this Court. The Attorney General's Office, taking the position that the State of Maryland would have to pay a money judgment rendered against Donnelly in her "official capacity," even though neither the State nor a governmen-

---

1. The original complaint contained only state law claims and was dismissed by the trial court. Upon a timely motion to alter or amend the judgment and to amend the complaint, the trial court permitted the plaintiff to amend her complaint to plead federal constitutional violations. The trial court refused to allow the plaintiff to amend her complaint to allege malice more particularly because, according to the trial court, the complaint "adequately alleged malice." The complaint was amended a second time to assert specifically a cause of action under of 42 U.S.C. § 1983.

tal entity had been named as a defendant, represented Donnelly in her "official capacity."

Donnelly moved in the circuit court to dismiss the complaint, asserting that the claims against her in her "official capacity" were barred by sovereign immunity while the claims against her in her "individual capacity" failed to state a cause of action because the complaint alleged that all acts occurred in the scope of her employment as Sheriff of Howard County. Donnelly argued in the circuit court, and continues to argue in this Court, that if a public employee's act is within the scope of his or her employment, the act is committed in the employee's "official capacity" and not in her "individual capacity." According to Donnelly, only acts occurring outside of the scope of employment are committed in a public employee's "individual capacity." Donnelly also contended that a writ of mandamus was not an appropriate remedy in this case. The circuit court, agreeing with the above-mentioned arguments by the defendant, dismissed the complaint.[2]

Ritchie appealed, and in an unreported opinion the Court of Special Appeals affirmed in part and reversed in part. In its original decision, the Court of Special Appeals reversed the dismissal of the § 1983 claim for damages against the defendant in her official capacity. Upon motion for reconsideration, however, the dismissal of the § 1983 official

---

**2.** The defendant Donnelly did not in the circuit court raise any issue concerning the sufficiency of the plaintiff's factual allegations to set forth claims that the Equal Protection and Due Process Clauses of the Fourteenth Amendment were violated. With regard to the claim of sex discrimination in violation of the Maryland Declaration of Rights made in the original complaint, the defendant did assert in her motion to dismiss the original complaint that the factual allegations were insufficient to set forth a cause of action based on sex discrimination. The assertion was not repeated after the complaint was amended. The circuit court did not rule on the sufficiency of the plaintiff's allegations except for the ruling that the plaintiff had adequately alleged malice. The sufficiency of the plaintiff's factual allegations to charge unconstitutional or tortious conduct has not been an issue in either the Court of Special Appeals or in this Court. In addition, the defendant has not in either appellate court challenged the circuit court's ruling that the plaintiff sufficiently alleged malice.

capacity damages action was affirmed based upon the court's view that the Sheriff of Howard County was a State rather than a local official and, therefore, was not a "person" for purposes of § 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45, 58 (1989). *See also Howlett By and Through Howlett v. Rose,* 496 U.S. ——, ——, 110 S.Ct. 2430, 2437, 110 L.Ed.2d 332, 346 (1990). The dismissal of the individual capacity damages action under § 1983 was also affirmed. The Court of Special Appeals adopted the reasoning of the trial court that the complaint did not state an individual capacity § 1983 claim because it alleged "that the acts and omissions complained of 'were at all times taken within the scope of [appellant's] employment [as Sheriff of Howard County].'" (Brackets are those of the Court of Special Appeals).

The Court of Special Appeals affirmed the dismissal of the state constitutional claims with respect to "individual capacity" claims and reversed as to "official capacity" claims. The "individual capacity" state constitutional claims were affirmed for the same reason that the federal individual capacity claims were affirmed, namely that, because the complaint asserted that the defendant at all times acted within the scope of her employment as Sheriff of Howard County, there could be no individual liability. In reversing the dismissal of the "official capacity" state constitutional claims, the Court of Special Appeals relied on this Court's decision in *Clea v. City of Baltimore,* 312 Md. 662, 541 A.2d 1303 (1988), for the proposition that a state officer is not entitled to invoke the immunity of the State with regard to state constitutional violations. The Court of Special Appeals stated:

"We recognize that *Clea* was a suit against the officer in his individual capacity. As we see it, however, the rationale in *Clea* is equally applicable to an official capacity action."

The Court of Special Appeals, holding that a writ of mandamus was an appropriate remedy if the plaintiff had

been illegally discharged, reversed the dismissal of the application for a writ of mandamus. The intermediate appellate court refused to consider the dismissal of the state non-constitutional tort claims because the issue was not raised until the plaintiff's reply brief in the Court of Special Appeals.

Donnelly, in her "official capacity," and Ritchie filed petitions for a writ of certiorari which we granted. The plaintiff's petition sought review of the Court of Special Appeals' decision upholding the dismissal of the "individual capacity" constitutional claims. Her petition also sought review of the dismissal of the non-constitutional tort claims. The defendant in her "official capacity" sought review of the Court of Special Appeals' decision reversing the dismissal of the "official capacity" state constitutional claims. The Court of Special Appeals' decision regarding the application for a writ of mandamus was not challenged in the defendant's certiorari petition.

## II.

We shall first consider the dismissal of the plaintiff's federal law claims under 42 U.S.C. § 1983 based on alleged violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[3]

The elements of a § 1983 cause of action, as well as the defenses to that cause of action, are defined by federal law. *Howlett By and Through Howlett v. Rose, supra,* 496 U.S. at ——, 110 S.Ct. at 2442, 110 L.Ed.2d at 353; *Md. Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 13–14, 511

---

**3.** The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides, in pertinent part, as follows:

"§ 1983. Civil action for deprivation of rights.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

A.2d 1079, 1085–1086 (1986); *County Exec., of Prince George's County v. Doe*, 300 Md. 445, 454–455, 479 A.2d 352, 357 (1984). Generally, § 1983 "creates a remedy for violations of federal rights committed by persons acting under color of state law." *Howlett By and Through Howlett v. Rose, supra*, 496 U.S. at —, 110 S.Ct. at 2433, 110 L.Ed.2d at 342.

A body of federal law, both complex and sometimes confusing, has developed under § 1983 concerning the difference between an action brought against a public officer or employee in his "official capacity" as opposed to an action brought against him in his "individual capacity." The capacity in which a public officer or employee was acting when the alleged deprivation of a federal right occurred determines, to some extent, what a plaintiff must prove in order to establish liability, what defenses are available to an officer or employee, and what is the nature of any liability imposed. *Kentucky v. Graham*, 473 U.S. 159, 166–167, 105 S.Ct. 3099, 3105–3106, 87 L.Ed.2d 114, 122 (1985). This dichotomy between different capacities has caused particular confusion in the present case.[4]

In addition to the dichotomy between "official capacity" and "individual capacity" claims, § 1983 authorizes an action against a "person" only. The analysis of whether a particular defendant is a "person," capable of being sued under § 1983, may also be a complex one. The analysis is influenced by the possibility that monetary relief will come from the state treasury. Consequently, the determination of whether the defendant is a "person" for purposes of § 1983 may sometimes depend upon the nature of the relief

---

4. As to the plight of litigants in attempting to frame properly legal issues and arguments in § 1983 cases, a recent plurality opinion of the Supreme Court noted "that petitioner has throughout this litigation been confronted with a legal landscape whose contours are 'in a state of evolving definition and uncertainty.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 120, 108 S.Ct. 915, 922, 99 L.Ed.2d 107, 116 (1988), quoting *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 256, 101 S.Ct. 2748, 2754, 69 L.Ed.2d 616, 625 (1981).

sought. Under some circumstances, the issue may also depend upon whether a state rather than a local government official is the defendant in a § 1983 case.

We shall first address the matter of the defendant Donnelly's status as a "person" capable of being sued under § 1983. We shall then turn to the dichotomy between "official capacity" and "individual capacity" claims as it relates to the allegations in the plaintiff's complaint.

### A.

■ With regard to an action for money damages, neither a state nor a state agency nor a state official *sued in his official capacity* is a "person" within the meaning of § 1983. Thus, an action for money damages under § 1983 cannot be maintained against a state, a state agency, or a state official sued in his official capacity. *See Howlett By and Through Howlett v. Rose, supra,* 496 U.S. at ——, 110 S.Ct. at 2437, 110 L.Ed.2d at 346; *Will v. Michigan Dept. of State Police, supra,* 491 U.S. at 71, 109 S.Ct. at 2312, 105 L.Ed.2d at 58. The Supreme Court in the *Will* case explained as follows (491 U.S. at 71, 109 S.Ct. at 2311, 105 L.Ed.2d at 58):

> "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the state itself.... We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device."

■ On the other hand, a state officer or employee, *sued in his individual capacity,* is a "person" subject to a suit for money damages under § 1983. *Kentucky v. Graham, supra,* 473 U.S. at 165, 105 S.Ct. at 3105, 87 L.Ed.2d at 121. *See, e.g., Burns v. Reed,* —— U.S. ——, ——–——, 111 S.Ct. 1934, 1940–1942, 114 L.Ed.2d 547, 559–560 (1991);

*Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Moreover, as to a claim for prospective relief, a state officer or employee is a "person" under § 1983 regardless of the capacity in which he is acting. An action for an injunction may be maintained under § 1983 against a state officer or employee even though the officer or employee was sued in his official capacity. *Will v. Michigan Dept. of State Police, supra,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10, 105 L.Ed.2d at 58 n. 10; *Sterling v. Constantin,* 287 U.S. 378, 393, 53 S.Ct. 190, 193, 77 L.Ed. 375, 382 (1932). *Ex parte Young,* 209 U.S. 123, 159–160, 28 S.Ct. 441, 454, 52 L.Ed. 714, 729 (1908); *Henne v. Wright,* 904 F.2d 1208, 1211 n. 2 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 692, 112 L.Ed.2d 682 (1991); *Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989); *Harrington v. Schossow,* 457 N.W.2d 583, 586 (Iowa 1990).

Local governments, unlike state governments, are "persons" under § 1983 and can be sued for money damages under § 1983 when governmental law, policy or custom contributed to the violation of federal constitutional or statutory rights. *Monell v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 690–695, 98 S.Ct. 2018, 2035–2038, 56 L.Ed.2d 611, 635–638 (1978). *See, e.g., City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *De Bleecker v. Montgomery County,* 292 Md. 498, 511–512, 438 A.2d 1348, 1355 (1982). A local government official, acting either in his official or in his individual capacity, is a "person" within the meaning of § 1983. *Kentucky v. Graham, supra,* 473 U.S. at 165–167, 105 S.Ct. at 3105–3106, 87 L.Ed.2d at 121–122; *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878, 883–884 (1985).

Because a state government official, sued in his official capacity, is not a "person" for purposes of a § 1983 action for damages, but a local government official is a "person"

under the statute regardless of the capacity in which he was acting or the nature of the relief sought, it is obviously necessary in many cases to determine whether an individual defendant is a state or a local government official for purposes of § 1983. This is often difficult when dealing with an official like a Maryland sheriff who has some characteristics of a state official and some characteristics of a local government official.

While, under Maryland law, a sheriff is a state official, the state law classification is not dispositive for purposes of § 1983. *See Rucker v. Harford County,* 316 Md. 275, 280, 558 A.2d 399, 401–402 (1989); *Clea v. City of Baltimore, supra,* 312 Md. at 670 n. 5, 541 A.2d at 1306–1307 n. 5; *Dotson v. Chester,* 937 F.2d 920, 926–927 (4th Cir.1991). The courts have recognized that, for purposes of § 1983, a sheriff may sometimes be treated as a state official and sometimes as a local official, depending upon the particular function which the sheriff was performing. *Dotson v. Chester, supra; Parker v. Williams,* 862 F.2d 1471, 1479 (11th Cir.1989); *Soderbeck v. Burnett County, Wis.,* 821 F.2d 446, 451 (7th Cir.1987). Recently in *Dotson v. Chester, supra,* 937 F.2d at 927, the United States Court of Appeals for the Fourth Circuit suggested that a Maryland sheriff may be a state official under § 1983 while engaged in the law enforcement activity of attempting to arrest a suspected lawbreaker, but the Court of Appeals held that, in operating a county jail, the sheriff was a local government official for purposes of § 1983.

It is unnecessary for us in this case to decide whether the defendant Donnelly committed the acts complained of as a state or a local government official for purposes of § 1983. The defendant has consistently adhered to the view that she was a state official under § 1983, and thus, with respect to official capacity damages claims, was not a "person" within the meaning of the federal statute. The Court of Special Appeals held that, with respect to official capacity damages claims, Donnelly was acting as a state

official and therefore could not be sued in her official capacity under § 1983. The plaintiff has not challenged this holding by the Court of Special Appeals. In fact, in her petition for a writ of certiorari and in her briefs in this Court, the plaintiff has expressly taken the position that the defendant was acting as a "state official" for purposes of both the § 1983 claims and the state law claims.[5]

In light of the position taken by both parties, we shall assume for purposes of the § 1983 claims in this case that the defendant was acting as a state official. Consequently, as the Court of Special Appeals correctly held, the defendant was not a "person" within the meaning of § 1983 with regard to official capacity claims for damages. *Will v. Michigan Dept. of State Police, supra.* Insofar as the plaintiff may have been seeking to impose liability for damages upon the defendant in her official capacity, such official capacity § 1983 claims were properly dismissed.

### B.

An official capacity § 1983 claim for damages differs from an individual capacity § 1983 claim for damages in several respects. For example, as the Supreme Court pointed out in the passage previously quoted from *Will v. Michigan Dept. of State Police, supra,* 491 U.S. at 71, 109 S.Ct. at 2311, 105 L.Ed.2d at 58, a § 1983 damages suit against a government "official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the [governmental entity] itself." The Court in *Kentucky v. Graham, supra,* 473 U.S. at 166, 105 S.Ct. at 3105, 87 L.Ed.2d at 121, explained:

"As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all

---

5. For example, the first question presented in the plaintiff's petition for a writ of certiorari was "[w]hether a *state* official may be held liable in her individual capacity for violation of the ... Fourteenth Amendment." (Emphasis added).

respects other than name, to be treated as a suit against the entity. . . . It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."

The *Kentucky v. Graham* opinion went on to note (*Id.* at n. 11):

"Should the official die pending final resolution of a personal-capacity action, the plaintiff would have to pursue his action against the decedent's estate. In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office. See Fed.Rule Civ. Proc. 25(d)(1); Fed.Rule App.Proc. 43(c)(1); this Court's Rule 40.3." [6]

*See also Brandon v. Holt, supra,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878.[7]

---

**6.** In a state court action, substitution of parties is provided for by Maryland Rule 2–241.

**7.** The Supreme Court's often repeated statement that a § 1983 suit for damages against a government official in his or her official capacity is in reality a suit against the government entity itself, and the Court's opinion in *Brandon v. Holt,* have given rise to conflicting views concerning the entry and collectibility of a money judgment directly against the government entity when the plaintiff has sued a government official in his or her official capacity under § 1983, has not named the government entity as a defendant, has not amended his complaint to add the government entity as a defendant, and has obtained a money judgment against the official in his or her official capacity. In Part I of its opinion in *Brandon v. Holt, supra,* 469 U.S. at 470–471, 105 S.Ct. at 877, 83 L.Ed.2d at 884–885, the Supreme Court held that, under Rule 15(b) of the Federal Rules of Civil Procedure, the plaintiff was entitled to amend his complaint "at this late stage of the proceedings" in order to add the governmental entity as a defendant. Then, in Part II of its *Brandon v. Holt* opinion, 469 U.S. at 471–473, 105 S.Ct. at 878, 83 L.Ed.2d at 885–886, the Court seemed to say that the judgment was directly against and collectible against the

In a § 1983 claim for damages against a government official in his or her individual capacity, the official, depending on his position, may assert absolute or qualified immunity. *Kentucky v. Graham, supra,* 473 U.S. at 166, 105 S.Ct. at 3105, 87 L.Ed.2d at 121. For example, absolute immunity under § 1983 has been extended to legislators, *Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019, 1027 (1951), judges, *Pierson v. Ray,* 386 U.S. 547, 554–555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 295 (1967), and prosecutors engaged in certain activity, *Burns v. Reed, supra,* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547; *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128, 142 (1976). In contrast, qualified or good faith immunity for other government officials varies with "the scope of discretion and responsibilities of the office and all

government entity even if the plaintiff did not "at this late stage" amend to add the government entity as a party.

It is not clear from the *Brandon v. Holt* opinion whether the Court was (1) simply saying that, as a matter of federal court procedure, the defendant could amend at the appellate level and add the governmental entity as a party, or (2) was saying that, as a matter of federal court procedure, the judgment is directly against the governmental entity even though the entity is not added as a party, or (3) was saying, as a matter of substantive § 1983 law, that the judgment is actually against and collectible directly against the governmental entity despite the failure to name the governmental entity as a party. As pointed out earlier in this opinion, the Attorney General in the present case apparently adheres to interpretation number (3). Some courts have the same view. *See, e.g., Oten v. Colorado Bd. of Social Services,* 738 P.2d 37, 41 (Colo.App.1987) ("thus, the State, even though not joined as a party, is liable for the judgment entered against the Director"). *See also Gegenheimer v. Galan,* 920 F.2d 307, 310 (5th Cir.1991); *Barter v. Boothbay,* 564 A.2d 766, 767 (Me.1989). *But cf. Wells v. Brown,* 891 F.2d 591, 593 (6th Cir.1989); *Johnson v. Kegans,* 870 F.2d 992, 998 n. 5 (5th Cir.), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989).

With regard to state officials sued in their official capacity, this issue was rendered moot by *Will v. Michigan Dept. of State Police, supra.* Consequently, we need not express any view on the matter in the present case. We do point out, however, that to the extent state law is applicable, Maryland law, in the absence of statute, does not permit a judgment against a person or entity if that person or entity is not a party in the action. *Brashears v. Collison,* 207 Md. 339, 349, 115 A.2d 289, 294 (1955).

the circumstances as they reasonably appeared at the time of the action." *Scheuer v. Rhodes, supra,* 416 U.S. at 247, 94 S.Ct. at 1692, 40 L.Ed.2d at 103. In a § 1983 suit against a governmental official in his or her official capacity, however, the above-mentioned immunity defenses are not available. *Kentucky v. Graham, supra,* 473 U.S. at 167, 105 S.Ct. at 3106, 87 L.Ed.2d at 122; *Owen v. City of Independence,* 445 U.S. 622, 638–639, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673, 685–686 (1980). Another difference between § 1983 individual capacity actions and official capacity actions is that punitive damages are available in the former but not in the latter. *Kentucky v. Graham, supra,* 473 U.S. at 167 n. 13, 105 S.Ct. at 3106 n. 13, 87 L.Ed.2d at 122 n. 13.

The above-described differences between individual capacity and official capacity § 1983 claims are largely differences in results or consequences. They do not provide a standard for determining whether an action against a public official is in fact an action against the defendant in his or her official capacity. Under the Supreme Court's opinions, a § 1983 action against a government officer or employee does not become an official capacity action simply because of the labels used by the parties, or because punitive damages are not sought, or because § 1983 immunity defenses are not pled.

■ As previously pointed out, in order to recover damages in a § 1983 suit against a governmental entity which is a "person" (*i.e.,* a county or municipality), the federal law violation must be caused by or must represent an implementation of a statute, regulation, policy, or custom of the governmental entity. The Supreme Court in *Monell v. Dept. of Soc. Serv. of City of N.Y., supra,* 436 U.S. at 692, 98 S.Ct. at 2036, 56 L.Ed.2d at 636, stated "that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Later the Court reiterated that

"it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694, 98 S.Ct. at 2037–2038, 56 L.Ed.2d at 638.

Because an official capacity § 1983 action is in reality an action against the government entity, it is this same factor, namely whether the federal law violation was caused by a governmental statute, policy or custom, which determines whether § 1983 official capacity liability can be imposed. The Supreme Court in *Kentucky v. Graham, supra,* 473 U.S. at 166, 105 S.Ct. at 3105, 87 L.Ed.2d at 122, after observing that to establish liability in an individual capacity § 1983 action "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," went on to state:

> "More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a ' "moving force" ' behind the deprivation, *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell, supra,* 436 U.S., at 694, 98 S.Ct., at 2037); thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law. *Monell, supra; Oklahoma City v. Tuttle,* 471 U.S. 808, 817–818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985)...."

The Court in *Brandon v. Holt, supra,* 469 U.S. at 473 n. 25, 105 S.Ct. at 878 n. 25, 83 L.Ed.2d at 886 n. 25, indicated that for a § 1983 action to be an "official capacity" action,

> "the record ... [must] establish that [plaintiffs'] injury was caused by the kind of 'policy or custom' that 'may fairly be said to represent official policy' of the city.... *See Monell,* 436 U.S., at 694, 98 S.Ct., at 2037."

*See also, e.g., City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412, 424 (1989) (critical issue in determining official capacity or governmental "liability under § 1983 is the question of whether there is a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation"); *City of St.*

*Louis v. Praprotnik, supra,* 485 U.S. at 122, 108 S.Ct. at 923, 99 L.Ed.2d at 117 (governmental and official capacity liability for damages "only when, [the government's] official policies cause their employees to violate another person's constitutional rights"); *Pembaur v. City of Cincinnati, supra,* 475 U.S. at 477, 106 S.Ct. at 1297, 89 L.Ed.2d at 461 (no official capacity or governmental liability for damages "unless action pursuant to official [governmental] policy of some nature caused a constitutional tort"); *Owen v. City of Independence, supra,* 445 U.S. at 630–634, 100 S.Ct. at 1404–1406, 63 L.Ed.2d at 680–683.[8]

 In holding that the plaintiff's § 1983 claims were not individual capacity claims but were asserted against the defendant in her official capacity only, the courts below did not utilize the above-discussed standard of whether a governmental law, policy or custom contributed to the alleged deprivation of federal rights. Rather, in accordance with the defendant's arguments, both the circuit court and the Court of Special Appeals employed the stan-

---

**8.** It is entirely clear from the Supreme Court's opinions that § 1983 official capacity liability for damages cannot be imposed on a government officer unless a statute, policy or custom of the government entity caused the deprivation of federal rights. If government law, policy or custom did not cause the federal law violation, only individual or personal liability may be imposed on the officer. What may not be as clear from the Supreme Court's opinions is whether a plaintiff is entitled to maintain a § 1983 damage claim against a government officer in the officer's individual or personal capacity even though the officer's unconstitutional act was caused by government policy and was, therefore, an act committed in the officer's official capacity. In other words, may a plaintiff impose personal liability for damages upon a government officer based on an act committed in the officer's official capacity? The United States Court of Appeals for the Second Circuit in *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988), and the United States Court of Appeals for the Third Circuit in *Melo v. Hafer,* 912 F.2d 628, 637 (3d Cir.1990), recently answered this question in the affirmative. Other courts have reached the opposite conclusion. The Supreme Court has granted the state officer's petition for a writ of certiorari in *Melo v. Hafer.* *See* ── U.S. ──, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991). The petitioner's brief in the Supreme Court argues that the United States Court of Appeals for the Third Circuit's decision was contrary to *Will v. Michigan Dept. of State Police, supra.*

dard for respondeat superior liability, namely whether the tortious acts were in the scope of the defendant's employment, as the test for determining whether the plaintiff's claims were against the defendant in her official capacity. The defendant and the courts below equated "official capacity" with scope of employment for respondeat superior purposes.

Not only did the Court of Special Appeals and the circuit court fail to utilize the correct standard, but they selected a standard which has been repeatedly rejected by the Supreme Court as the test for governmental and official capacity liability under § 1983. *See, e.g., City of Canton, Ohio v. Harris, supra,* 489 U.S. at 385, 109 S.Ct. at 1203, 103 L.Ed.2d at 424 (a government entity "can be found liable under § 1983 only where the [government entity] *itself* causes the constitutional violation at issue. *Respondeat superior* ... liability will not attach under § 1983"); *City of St. Louis v. Praprotnik, supra,* 485 U.S. at 121–122, 108 S.Ct. at 923, 99 L.Ed.2d at 117 (pointing out in the plurality opinion that in the *Monell* case "the Court rejected the use of the doctrine of *respondeat superior* and concluded that [government entities] could be held liable only when an injury was inflicted by a government's 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy'"); *Pembaur v. City of Cincinnati, supra,* 475 U.S. at 478, 106 S.Ct. at 1297, 89 L.Ed.2d at 462 (government "cannot be made liable by application of the doctrine of *respondeat superior*"); *Kentucky v. Graham, supra,* 473 U.S. at 168, 105 S.Ct. at 3106, 87 L.Ed.2d at 123; *Monell v. Dept. of Soc. Serv. of City of N.Y., supra,* 436 U.S. at 691–693, 98 S.Ct. at 2036–2037, 56 L.Ed.2d at 636–638.

Most actions taken by a government officer or employee "under color of" law, governmental custom or usage will be actions in the scope of employment. Consequently, the test utilized by the circuit court and the Court of Special Appeals in this case would make most § 1983 actions official capacity actions. While this result might help state officials

who cannot be sued for damages in a § 1983 official capacity action, it could greatly expand the § 1983 liability of counties and municipalities beyond that contemplated by Congress and reflected in the opinions of the Supreme Court.

Numerous tortious acts by government officers or employees are committed in the scope of employment but are not caused by a law, policy or custom of the government entity. Therefore, under the Supreme Court's decisions, such torts are not committed in the official capacity of the officers or employees for purposes of § 1983. They are committed in the individual capacity of the officers or employees who are personally liable in damages. *See, e.g., Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975) (school official who expelled students in violation of the students' federal constitutional rights liable in a personal damages action under § 1983 if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student"); *Scheuer v. Rhodes, supra,* 416 U.S. at 243, 94 S.Ct. at 1690, 40 L.Ed.2d at 100.

On the facts of the present case, the plaintiffs' § 1983 damage claims are individual capacity claims. The gist of the defendant's allegedly wrongful conduct was discharging the plaintiff because of her sex and making false statements about how the plaintiff had originally qualified for firearm use. While the defendant clearly acted within the scope of her government employment when she discharged the plaintiff, the record does not support even a hint that gender discrimination in the discharge of employees, and making false statements like that allegedly made here, constitute the policy or custom of the State of Maryland or of the Howard County Sheriff's Office. There is no suggestion of any prior incidents in the Howard County Sheriff's Office of sex discrimination in the discharge of employees or of allegedly defamatory statements about employees. Rather, as far as the record in this case shows, what

allegedly happened here appears to have been an isolated occurrence. *Cf. Pembaur v. City of Cincinnati, supra,* 475 U.S. at 485, 106 S.Ct. at 1301, 89 L.Ed.2d at 466 (White, J., concurring, and pointing out that the "City of Cincinnati frankly conceded that [the unconstitutional action of] forcible entry of third-party property to effect otherwise valid arrests was standard operating procedure"); *Dotson v. Chester, supra,* 937 F.2d at 931 n. 13, 932 (long-standing unconstitutional conditions at county jail).

 It might be argued that because the General Assembly of Maryland has delegated to the Sheriff of Howard County the authority to discharge deputy sheriffs in Howard County, *see* Maryland Code (1974, 1989 Repl.Vol., 1991 Cum.Supp.), § 2–309(*o* ) of the Courts and Judicial Proceedings Article, the alleged discriminatory action taken by the Sheriff in this case evidences a government policy under the principles discussed in the plurality opinions in *City of St. Louis v. Praprotnik, supra,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107, and *Pembaur v. City of Cincinnati, supra,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452. We do not, however, believe that the argument would be tenable.

The conduct alleged here was directly contrary to the law and policy of the State of Maryland. That law and policy is fully applicable to the 24 sheriff's offices, all of which are state agencies. The discharge of a deputy sheriff because of her sex is clearly not permitted by Art. 46 of the Maryland Declaration of Rights.[9] *See State v. Burning Tree Club, Inc.,* 315 Md. 254, 293–296, 554 A.2d 366, 386–387, *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). Additionally, Maryland Code (1957, 1991 Repl.Vol.), Art. 49B, § 16(a), specifically makes it unlawful for an employer, *inter alia,* "to discharge any individual ... because of such individual's ... sex...." Under Art. 49B,

---

9. Art. 46 states:
 "Equality of rights under law shall not be abridged or denied because of sex."

§ 7(a)(1), this prohibition is made applicable to an officer of the State of Maryland, including a sheriff.

Consequently, while the Sheriff of Howard County may be the state official generally having final authority to discharge deputy sheriffs in Howard County, the Sheriff's authority in this regard is circumscribed by the provisions of state law forbidding the discharge of a deputy sheriff because of the latter's gender. Furthermore, under Art. 49B of the Code, the Sheriff's discriminatory discharge of a deputy sheriff could be overturned by the Maryland Commission on Human Relations.

The plurality opinion in *City of St. Louis v. Praprotnik, supra,* 485 U.S. at 127, 108 S.Ct. at 926, 99 L.Ed.2d at 120, does point out that one "may be able to prove the existence of a widespread practice that, although not authorized by written law ..., is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.' " [10] The opinion later stated (485 U.S. at 131, 108 S.Ct. at 928, 99 L.Ed.2d at 122–123):

"Refusals to carry out stated policies could obviously help to show that a [government's] actual policies were different from the ones that had been announced. If such a showing were made, we would be confronted with a different case than the one we decide today."

Similarly, no such showing or allegations were made in the present case. There are no indications or allegations of any practice either in Maryland sheriffs' offices generally or in the Howard County Sheriff's Office of discrimination against women in the hiring or discharge of deputy sheriffs or other employees. As previously indicated, the defendant's alleged wrongful conduct, if it occurred, was an isolated incident which was contrary to the law, policy and custom of the government.

---

**10.** Quoting from *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142, 160 (1970).

As no government law, policy or custom played a part in the defendant's alleged unconstitutional acts, the § 1983 claims in this case were individual capacity claims. That the defendant was acting within the scope of her employment does not undermine the validity of the plaintiff's § 1983 claims as individual capacity claims. The Court of Special Appeals erred in upholding the dismissal of these § 1983 individual capacity claims on such a ground.

### III.

We now turn to the plaintiff's claims based on alleged violations of Art. 24 and Art. 46 of the Maryland Declaration of Rights.[11] The defendant, purportedly in her "official capacity," contended that the state constitutional claims were barred by the doctrine of sovereign immunity. The defendant, purportedly in her "individual capacity," asserted that the action was without merit because the defendant was at all times acting within the scope of her employment and thus the claims were actually "official capacity" claims. The circuit court agreed with both arguments. The Court of Special Appeals reversed with respect to the defendant in her "official capacity" and affirmed the dismissal of the claim against her in her "individual capacity."

Both the defendant's arguments and the decision of the Court of Special Appeals assume that an official/individual capacity distinction, like that under § 1983, exists with regard to actions against individual public officials for damages grounded upon alleged violations of Maryland constitutional rights. That assumption is incorrect.

---

**11.** Article 24 of the Maryland Declaration of Rights provides:
"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."
As to Art. 46 of the Declaration of Rights, *see* footnote 9, *supra.*

In *Widgeon v. Eastern Shore Hospital*, 300 Md. 520, 523, 479 A.2d 921, 922 (1984), we took the position that a common law action for damages will lie for violations of certain provisions of the Maryland Constitution, including Articles 24, 26 and 46 of the Declaration of Rights. The doctrine of sovereign immunity, however, precludes such a damages action against the "State of Maryland" absent legislation consenting to suit. *See Dep't of Natural Resources v. Welsh*, 308 Md. 54, 66, 521 A.2d 313, 319, (1986); *Dunne v. State*, 162 Md. 274, 284–287, 159 A. 751, 755–756, *cert. denied*, 287 U.S. 564, 53 S.Ct. 23, 77 L.Ed. 497 (1932); *Weyler v. Gibson*, 110 Md. 636, 654, 73 A. 261, 263 (1909).

The theory that, in the absence of a statute, the State itself cannot be held liable in damages for acts which are unconstitutional rests on public policy and a theoretical notion of the "State." *Weyler v. Gibson, supra,* 110 Md. at 654, 73 A. at 263. In *Dunne v. State, supra,* 162 Md. at 284–285, 159 A. at 755, the Court reaffirmed the principle, saying: "The 'State' spoken of in this rule [of sovereign immunity] 'itself is an ideal person, intangible, invisible, immutable,' " which can " 'act only by law, [and] whatever it does say and do must be lawful.' " When the State's agents act wrongly, their acts are ultra vires, and it is " 'the mere wrong and trespass of those individual persons....' " The principle that the State cannot be held liable in damages does not extend to those public officials who, "under color of their office, ... have injured one of the state's citizens," *Dunne v. State, supra,* 162 Md. at 285, 159 A. at 755. To do so would be to "create a privileged class, free from liability for wrongs inflicted or injuries threatened." *Ibid.*

The defendant, arguing that a public official is entitled to the State's immunity when he or she is sued for money damages based on a violation of state constitutional rights, relies on *Stanley v. Mellor*, 168 Md. 465, 178 A. 106 (1935), and *Red Star Line v. Baughman*, 153 Md. 607, 139 A. 291 (1927). Neither case supports the defendant's argument.

In *Stanley v. Mellor, supra,* the Court took the position that the Eleventh Amendment barred an equity action by the trustee in bankruptcy, under the federal bankruptcy statute, against a clerk of the court to require the refund of monies paid to the clerk. The action sought a refund of money from the State rather than a judgment for money damages against the clerk of the court. Moreover, there was no state constitutional claim involved. In *Red Star Line v. Baughman, supra,* the plaintiffs were denied mandamus relief against the Commissioner of Motor Vehicles which would have compelled the Commissioner to refund money paid into the State Treasury, 153 Md. at 611, 139 A. at 293. Consequently, in both of these cases, although the clerk and the Commissioner, respectively, were named as defendants, the actions were not based upon constitutional violations and the relief sought was not a judgment for damages against the officers personally; instead the plaintiffs sought an order compelling the return of money from the State. The present case, by contrast, is an action at law for a judgment for money damages against an individual based on that individual's alleged action depriving the plaintiff of state constitutional rights.

This Court has consistently held that a public official who violates the plaintiff's rights under the Maryland Constitution is personally liable for compensatory damages. *Clea v. City of Baltimore, supra,* 312 Md. at 680, 541 A.2d at 1312; *Mason v. Wrightson,* 205 Md. 481, 109 A.2d 128 (1954); *Heinze v. Murphy,* 180 Md. 423, 24 A.2d 917 (1942); *Weyler v. Gibson, supra,* 110 Md. at 654, 73 A. at 263. *See also Dunne v. State, supra.* This liability for damages resulting from unconstitutional acts is in no way based upon the "official/individual capacity" body of law which has developed in federal § 1983 claims. Liability has been imposed upon the government official when his unconstitutional actions were in accordance with or dictated by governmental policy or custom. Liability has also been imposed when the unconstitutional acts were inconsistent with governmental policy or custom. Moreover, contrary to the view of the

circuit court in the present case, liability has been imposed upon the official when he was acting in the scope of his employment.

The first case in this Court to rule on a public official's liability based upon a state constitutional violation was *Weyler v. Gibson, supra,* 110 Md. 636, 73 A. 261, where the Warden of the Maryland Penitentiary was held personally liable for an encroachment on the plaintiffs' land caused by an expansion of the Penitentiary. The expansion of the Penitentiary was authorized by a statute which specified the area of its expansion and authorized condemnation. The "Directors of the Penitentiary" were responsible for the encroachment without having acquired the plaintiffs' land. In denying the extension of the State's immunity to the Warden for the constitutional violation, the Court stated (110 Md. at 654, 73 A. at 263):

> "But it would be strange indeed, in the face of the solemn constitutional guarantees, which place private property among the fundamental and indestructible rights of the citizen, if this principle could be extended and applied so as to preclude him from prosecuting an action ... against a State Official unjustly and wrongfully withholding property...."

The Court affirmed a judgment for the plaintiffs for the property, nominal damages, and costs.

In *Mason v. Wrightson, supra,* 205 Md. 481, 109 A.2d 128, a sergeant of the Baltimore City Police Department was held personally liable for the unlawful search of a bar patron. Although the search was conducted pursuant to an order from the Commissioner of Police, 205 Md. at 484–485, 109 A.2d at 129, the sergeant was held personally liable for damages. Chief Judge Brune for the Court emphasized (205 Md. at 487, 109 A.2d at 131):

> "When a peace officer goes beyond the scope of the law he may become liable civilly and is not shielded by the immunity of the law.... The fact that the appellee was acting under orders of a superior officer does not relieve

him of civil liability ·for his actions which are illegal and beyond the scope of duty."

Although in *Mason* the unlawful search was in accordance with departmental policy, the opposite was true in *Clea v. City of Baltimore, supra,* 312 Md. 662, 541 A.2d 1303. In *Clea,* a police officer was held personally liable for damages resulting from an unconstitutional search of the plaintiff's home. The officer, because of a mistake on his part, applied for a search warrant for the wrong house and searched the wrong house. The unlawful search, although not in accordance with governmental policy, was clearly within the scope of the officer's employment. This Court held that not allowing the recovery of compensatory damages from the police officer would

"leave an individual remediless when his constitutional rights are violated, would be inconsistent with the purpose of the constitutional provisions ... [and would] largely render nugatory the cause of action for violation of constitutional rights recognized in *Widgeon, Mason, Heinze, Weyler,* and other cases." 312 Md. at 685, 541 A.2d at 1314.[12]

---

12. In its unpublished opinion in the present case, the Court of Special Appeals stated:

> "We recognize that *Clea* was a suit against the officer in his individual capacity. As we see it, however, the rationale in *Clea* is equally applicable to an official capacity action."

The above-quoted statement is both puzzling and misleading, as neither *Clea* nor any other opinion of this Court has adopted, in connection with actions for violations of state constitutional rights, the federal law § 1983 distinction between official and individual capacity actions. Moreover, as the Court of Special Appeals expressed the erroneous view that what distinguishes an "official capacity" § 1983 action from an "individual capacity" action is whether the employee is acting in the scope of his or her employment, it is puzzling why the intermediate appellate court classified *Clea* as an "individual capacity" action. The police officer in *Clea* was clearly acting within the scope of his employment. On the other hand, his violation of the plaintiffs' constitutional rights was in no way dependent upon or even consistent with any departmental or governmental law, policy or custom. Consequently, if a § 1983 claim had been made in the *Clea* case, it would have been an "individual capacity" claim. Nevertheless, since a § 1983 claim was not made in *Clea,* it serves no purpose to categorize

Thus, in *Clea*, the state officer was not entitled to assert the sovereign immunity of the State. Moreover, the officer was not entitled to claim a good faith or qualified immunity for a constitutional violation. The presence or absence of good faith in such a claim is relevant to punitive damages only. *Clea v. City of Baltimore, supra*, 312 Md. at 683, 541 A.2d at 1313. The *Clea* opinion discussed the decision in *Heinze v. Murphy, supra*, as follows (*ibid.*):

> "This Court reversed the award of punitive damages because of the absence of malice but upheld an award of compensatory damages, saying (180 Md. at 429, 24 A.2d 917):
>
>> 'The generally accepted rule in reference to ... damages, when an officer, such as a policeman, is involved, is that: "An officer who acts in good faith in making an arrest is absolved from punitive or exemplary damages, even though he is liable for compensatory damages. However, such damages may be allowed against an officer under circumstances upon which bad faith or malice may be attributed to him in making the arrest."'"

The Court went on to say (312 Md. at 684, 541 A.2d at 1314):

> "These cases make it clear that an official who violates an individual's rights under the Maryland Constitution is not entitled to any immunity, and that the presence or absence of malice is pertinent only to the question of punitive damages."

A review of this Court's decisions thus discloses that (1) the particular official/individual capacity dichotomy that is part of § 1983 law does not apply to state constitutional violations,[13] (2) the doctrine of sovereign immunity

---

the claims there as either "individual capacity" or "official capacity" claims.

13. This does not mean, however, that Maryland law does not recognize an official/individual capacity dichotomy in other contexts. For example, there are numerous statutes which authorize actions against the state or local governments and designate particular officials as the

prevents the State from being held liable in damages for an unconstitutional act absent a legislative waiver, and (3) the state official who violates a plaintiff's constitutional right is personally liable for compensatory damages to that plaintiff and, in the absence of statute, does not have the qualified immunity defense available in a § 1983 action.[14] Therefore,

---

appropriate defendants. In such actions, the officials are not personally liable for damages. There may be non-statutory contexts in which a dichotomy between official capacity and individual capacity has been recognized by our cases. We simply hold in the present case that the particular and confusing dichotomy developed in § 1983 cases has no application to actions against individual government officials for money damages based on violations of Maryland constitutional rights.

**14.** The General Assembly, however, could provide that the State will be liable for damages resulting from state constitutional torts such as those alleged by the plaintiff in this case, and that the individual employee will be immune. In other words, the Legislature may substitute state liability for individual employee liability. The Legislature has done precisely this, under certain circumstances, in the Maryland Tort Claims Act, Code (1984, 1991 Cum.Supp.), §§ 12–101 through 12–110 of the State Government Article; Code (1974, 1989 Repl.Vol., 1991 Cum.Supp.), § 5–399.2 of the Courts and Judicial Proceedings Article. Moreover, the sheriff of a county is a state employee within the meaning of the statute, § 12–101(6) of the State Government Article; *Boyer v. State,* 323 Md. 558, 572, 594 A.2d 121 (1991); *Rucker v. Harford County,* 316 Md. 275, 281, 558 A.2d 399, 402 (1989).

As a result of 1985 amendments to the Maryland Tort Claims Act, the statute does not exclude specified categories of torts except claims arising "from the combatant activities of the State Militia during a state of emergency," § 5–399.2(a)(3) of the Courts and Judicial Proceedings Article. Otherwise, "tort actions generally" are encompassed, *Simpson v. Moore,* 323 Md. 215, 219, 592 A.2d 1090 (1991), as long as the state employee's actions were not malicious, grossly negligent, or outside the scope of employment, *Boyer v. State, supra,* 323 Md. at 579, n. 14, 594 A.2d at 131, n. 14; *Sawyer v. Humphries,* 322 Md. 247, 253, 587 A.2d 467, 470 (1991). House Bill 364 of the 1989 Session of the General Assembly would have provided that "[i]mmunity is not waived" under the Maryland Tort Claims Act for "any state ... constitutional claim." In the course of the bill's legislative process, this provision was amended out. Ultimately House Bill 364 did not pass.

In the present case, the defendant is not entitled to the statutory immunity defense under the Maryland Tort Claims Act because of the plaintiff's allegations of malice. *Sawyer v. Humphries, supra.* If at trial the plaintiff fails to prove malice and the defendant asserts

the Court of Special Appeals erred in splitting the state constitutional claims into official capacity and individual capacity claims, and in affirming the dismissal of the claims against the defendant in her "individual capacity." State law does not allow this bifurcation. The dismissal of the state constitutional claims simply should have been reversed.

## IV.

The final question presented for review concerns the plaintiff's state non-constitutional tort claims. The Court of Special Appeals refused to consider these claims because the plaintiff failed to address them in her opening brief and did not deal with them until her reply brief in the Court of Special Appeals.

We agree with the Court of Special Appeals that a reply brief should ordinarily be confined to responding to the points and issues raised in the appellee's brief. *See Rose v. Paape*, 221 Md. 369, 379, 157 A.2d 618, 624 (1960). The Court of Special Appeals in this case could have, in its discretion, considered the arguments relating to non-constitutional tort claims and made for the first time in the reply brief. Its refusal to do so, however, was not an abuse of discretion.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE CIRCUIT COURT'S JUDGMENT IN PART AND REVERSE THAT JUDGMENT IN PART AS INDICATED IN THIS OPINION, AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PRO-

---

immunity under the Tort Claims Act, the circuit court will have to rule on whether the statutory immunity defense is applicable. The issue could also arise in other ways, such as requests for jury instructions. *See Sawyer v. Humphries, supra,* 322 Md. at 262, 587 A.2d at 474.

CEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPE-CIAL APPEALS TO BE PAID ONE–THIRD BY THE PLAINTIFF AND TWO–THIRDS BY THE DEFENDANT.