695 A.2d 1268

Monica Anne PENHOLLOW,

v.

BOARD OF COMMISSIONERS FOR CECIL COUNTY et al.

No. 1848, Sept. Term, 1996.

Court of Special Appeals of Maryland.

June 30, 1997.

William D. Hooper, Jr. (Hooper & Jacobs, L.L.C., on the brief), Bel Air, for Appellant.

Niccolo N. Donzella (Gregory M. Miller and Shapiro and Olander, P.A., on brief), Baltimore, for Appellees.

Argued before CATHELL and SALMON, JJ., and JOHN J. GARRITY, J. (Retired, Specially Assigned).

CATHELL, Judge.

Monica Anne Penhollow appeals from the decision of the Circuit Court for Cecil County granting motions to dismiss and motions for summary judgment in favor of the Board of County Commissioners for Cecil County (Cecil County), several members of the Board of County Commissioners for Cecil

County who were sued in their individual capacities, Rodney E. Kennedy, George O. Haggerty, Jeffrey D. Clewer, Leon A. Ordway, Sergeant James Russell, and Corporal James Christopher (collectively, appellees). Appellant presents two questions on appeal:

A) Did the trial Court improperly dismiss Counts I and II or in the alternative grant summary judgment as a matter of law?

B) Did the trial Court improperly grant summary judgment as to Counts III—V as a matter of law?

We shall affirm in part and reverse in part the judgment of the trial court.

### The Facts

From 1985 until the filing of the complaint below,[1] appellant was employed as a correctional officer at the Cecil County Detention Center. Appellant attained the rank of Corporal in 1987 and retained that rank at the time she filed her complaint. Appellees in the case *sub judice* are the Board of County Commissioners for Cecil County and numerous individuals. At the time of the filing of the complaint, the individuals and their employment positions were as follows: W. Edwin Cole Jr., Commissioner; A. Marie Cleek, Commissioner; the Successor of Grayson L. Abbott Jr.,[2] Commissioner; Rodney E. Kennedy, Sheriff of Cecil County; George O. Haggerty, Chief Deputy Sheriff of Cecil County; Jeffrey D. Clewer, Director of the Cecil County Detention Center; Leon A. Ordway, Deputy Director of the Cecil County Detention Center; James Russell, correctional officer; and James Christopher, correctional officer.

Appellant alleged in her complaint that she had been "subjected to different terms, conditions, and privileges of her

---

1. We do not know whether appellant is still employed with the Cecil County Detention Center. The complaint indicates that at the time of its filing, appellant was still employed as a correctional officer.

2. Grayson L. Abbott Jr. was deceased at the time of the filing of the complaint.

employment on the basis of her sex" and that she had been "forced to work in an intimidating, hostile, and offensive working environment, on the basis of her sex." Her complaint alleged five counts: Count I, violation of 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964)(hereinafter Title VII); Count II, violation of 42 U.S.C. § 1983 (hereinafter § 1983); Count III, negligent hiring or retention; Count IV, intentional infliction of emotional distress; and Count V, violations of Articles 24 and 46 of the Maryland Declaration of Rights. In particular, appellant complained of the following actions:

a. On May 20, 1994, the Plaintiff [appellant] received an interim evaluation that was ordered by Jeffrey Clewer. This evaluation was performed by Sergeant Anna Husfelt who indicated on the report form that the Plaintiff's overall rating was "fair, but needs improvement." Sergeant Husfelt informed the Plaintiff that she had given the Plaintiff a higher rating than the one noted on the report, but was ordered by Jeffrey Clewer to change the evaluation to a lower category. The Sheriff's Department and County policies provide that a yearly evaluation is to be completed on all employees after an employee serves a year probation. An employee who falls below "meets expectations" should have an additional document placed on file regarding the employee's work. No male supervisors received an interim evaluation....

b. The Plaintiff received a notice to report for Grand Jury duty from January 17, 1994 through May 13, 1994. The Plaintiff informed her supervisor on January 3, 1994 of that fact. Additionally the Plaintiff gave Sergeant Anna Husfelt a copy of the notice to report and informed Sergeant Husfelt that the Plaintiff had called the State's Attorney to make certain her serving on the Grand Jury would not constitute a conflict of interest due to her employment.... Judge Cole informed the Plaintiff that he had received calls from Sergeant Linda Lannen, Jeffrey Clewer and George Haggerty regarding a conflict of interest.... In similar circumstances involving male employees who had

been called for jury duty, no calls were ever placed to any of the judges.

c. From September 1, 1994 through September 25, 1994, Sergeant Anna Husfelt was on leave. By letter dated August 25, 1994, Sergeant Husfelt set forth a list of tasks which she expected accomplished during her absence by both the Plaintiff and Corporal James Christopher. Sergeant Husfelt specifically assigned the Plaintiff to the control area and Corporal Christopher to booking. Both Corporal Christopher and the Plaintiff were ordered, in writing, to submit a log of events which took place while Sergeant Husfelt was on leave upon her return. The Plaintiff submitted her log on September 25, 1994; however, Corporal Christopher has never submitted anything in writing as ordered. The Plaintiff was the senior ranking Corporal, placing Corporal Christopher in the booking area put him in the position of the supervisor in charge.... The Plaintiff was not treated as the senior ranking supervisor in this instance.

d. On August 1, 1993, Corporal James Christopher stated to Corporal Alex Holotanko, referring to the Plaintiff, that he (Corporal Christopher) had worked hard in moving an inmate to a section which he supervised. He stated [, after discovering that appellant had the inmate further moved,] to Corporal Holotanko "She's a fucking bitch." "She's got the brain the size of a pea and I am tired of her fucking shit." This conversation occurred in the booking station at a shift change. Deputy Kevin Sinclair and DFC Lisa Crocket were present and overheard the conversation.... The Plaintiff has complained repeatedly over the last three years concerning Corporal James Christopher's attitude, comments and treatment of female employees, all without action being taken to correct the problems....

e. On January 28, 1993, at the booking station, the Plaintiff was accused by Sergeant James Russell of taking his paperwork to Mr. Clewer's office. The Plaintiff informed Sergeant Russell that she had not, but had given it to Mr. Clewer at the booking station. Sergeant Russell

stated "You took my fucking paperwork to Jeff's office because he told me you did." "You better not be fucking with any of my paperwork." Sergeant Russell continued to use foul and abusive language. The Plaintiff stated to him on numerous occasions that she did not appreciate him talking to her in such a manner, especially in front of subordinates. The Plaintiff suggested that if Sergeant Russell wished to continue the conversation that it take place in the supervisor's office. Present during this incident were Sergeant Danny Blackburn, Corporal Alex Holotanko, Corporal James Christopher, Corporal Thomas Morris, DFC Patty Miller, DFC Harry Griswold, DFC Basil Goodwin, Deputy Mary Ann Sprout, and Deputy James Belcher. The Plaintiff filed a verbal complaint with Sergeant Anna Husfelt and later with Jeffrey Clewer. There was no further investigation provided or follow up by Mr. Clewer. Of the nine staff members present, three, DFC Patty Miller, DFC Harry Griswold, and DFC James Belcher complained to the Plaintiff that they not be exposed to this type of conversation and behavior from a supervisor. The Plaintiff spoke with Mr. Clewer who was Sergeant Russell's supervisor, however, nothing was ever done.

f. On October 3, 1990, the Plaintiff was transferred via an inter-departmental transfer by Alexander M. Francis, the then Detention Center Director. The Plaintiff was assigned to the 1600–2400 hour shift under the supervision of Sergeant Anna Husfelt. Shortly thereafter the Plaintiff began to receive orders to cover other shifts. For instance, she would get off of work at midnight and be made to report back at 8:00 a.m. She would get off at 4:00 p.m., and made to report back [at] midnight. There were many times that the Plaintiff would get off at 8:00 a.m. and be required to report again at 4:00 p.m. This occurred continuously throughout 1991, 1992, and 1993. During this period of time Corporal James Christopher worked exclusively day shift and was never required to work overtime. The Plaintiff was the only supervisor ordered to work the evening and midnight shifts.

g. On October 18, 1991, the Plaintiff was assigned by Mr. Clewer as the "Control Center Supervisor." The Plaintiff worked this assignment four days a week. No other male supervisors were required to work a post four days a week. The Plaintiff received no shift briefings, copies of any reports about incidences, fights, contraband, etc. On Saturdays, the Plaintiff would be the only supervisor on duty. The Plaintiff finally complained on March 21, 1992, to Sergeant Gary Hinkle. The Plaintiff was later informed by Deputy Christine Davis that the Plaintiff could not be moved out of control because he had orders from the Sheriff to keep her on that duty. If something happened Sergeant Hinkle would get in trouble.

h. On August 13, 1993, Deputy Director Ordway designated the Plaintiff as the Female Unit Supervisor. Initially the Plaintiff worked this assignment from midnight to 8:00 a.m. The Plaintiff worked this shift until September 30, 1993. She was then assigned to the 4:00 p.m. to 12:00 a.m. shift by Jeffrey Clewer. The Plaintiff worked 4:00 p.m. to 12:00 a.m. until October 31, 1993 when she was moved to the 8:00 a.m. to 4:00 p.m. shift to do the same assignment. This work area is normally staffed by a correctional officer and not a supervisor.

i. In November, 1993, Mr. Ordway assigned the Plaintiff to oversee booking and make recommendations for changes in the 8:00 a.m. to 4:00 p.m. shift. No male supervisor has ever been assigned Control, Female Unit, Booking and Property supervision positions. The Control Center is run by two officers. The Plaintiff was assigned to the Female Unit which is known as a disciplinary post. The Plaintiff was referred to by the male employees as "Corporal Penhappy" presumably because she wrote or documented the complaints the Plaintiff had regarding her working conditions. The assignment as the Booking Supervisor had never been assigned to a male supervisor. In the female unit the Plaintiff received no briefings and no copies of reports in reference to controlling contraband, problem inmates, etc.

j. On October 5, 1992, the Plaintiff was wrongfully charged with an unauthorized release of a prisoner. Disciplinary sanctions included two days suspension and six months probation. The Plaintiff appealed this action to Jeffrey Clewer on October 16, 1992. Mr. Clewer upheld this action per letter dated October 25, 1992. The Plaintiff appealed to and met with Chief Deputy Haggerty on November 5, 1992. Chief Deputy Haggerty upheld Mr. Clewer's decision per letter dated November 5, 1992. The Plaintiff then appealed the matter to a third level hearing board but never received anything from the board after she filed her appeal. Those persons having personal knowledge thereof are Corporal Thomas Morris, Sergeant Linda Lannen, and Sergeant Anna Husfelt, Jeffrey Clewer and George Haggerty.

k. On December 31, 1992, the Plaintiff met with Sergeant James Corcoran regarding her evaluation. When the Plaintiff arrived she observed her evaluation laying on Sergeant Corcoran's desk. Sergeant Corcoran informed the Plaintiff that the evaluation was not what he submitted and that his was considerably higher, however, Jeffrey Clewer had ordered him to lower the evaluation.

l. On October 15, 1991, the Plaintiff was wrongfully disciplined for the escape of two inmates by Chief Deputy, Acting Detention Center Director, Johnny G. Lough. The escape had taken place on August 15, 1991, while Corporal James Christopher was the shift supervisor. Corporal Christopher became ill and turned his shift over to Corporal Thomas Morris. Both corporals are subordinate to the Plaintiff in terms of tenure. As a result of being charged, the Plaintiff was given six months probation and given a three day suspension without pay. Deputy James Belcher who was charged along with the Plaintiff was also given the same discipline. The Plaintiff retained personal legal counsel and as a result of various grievances, it was determined that the Plaintiff and Deputy Belcher were not responsible for the escape. It was ordered that the three days back pay be reimbursed. Sheriff Rodney Kennedy intercepted the

three day pay check and refused to return [it] to the Plaintiff. It was only as a result of the Plaintiff's complaint to the County Commissioners that a hand written check was issued by the Commissioners, and the check Sheriff Rodney Kennedy had in his possession was voided. Corporal Morris never filed any grievance paperwork per County policy, though he received his three day suspension pay back from Sheriff Rodney Kennedy.

m. In 1991 at the Annual Sheriff's Department Awards Banquet staff were recognized for not using sick leave during the previous year. The Plaintiff was one of many who were to receive recognition for not using any sick leave. The Plaintiff worked during this event. The Plaintiff repeatedly requested her award from Sergeant James Corcoran, Jeffrey Clewer, George Haggerty, Rodney Kennedy and Tony Shivery, but never received it. Corporal James Christopher who also was entitled to receive recognition and was unable to attend the banquet, however, he received his award. To this day, the Plaintiff has never received her award.

n. During the year 1991, the Plaintiff was entitled to "comp time" which she had earned but which was refused by Jeffrey Clewer.

o. Supervisors are required to be in the dining hall during all inmate meals. When the Plaintiff worked a shift with Corporal Christopher he would be in the dining hall per Mr. Clewer's orders. When the Plaintiff would enter the dining hall Corporal Christopher would not allow her to work in the area and would make statements in front of the male inmates that he did not need her or as he stated on 12/25/91, "I don't need you in here. Go sit in booking and look nice."

p. The Plaintiff's mailbox has typed on it "Corporal Monica Penhollow???" All other supervisors have their names followed by their respective shift assignments labelled on their boxes.

Appellees filed a motion to dismiss or for summary judgment as to Counts I and II and for summary judgment as to Counts III, IV, and V. The trial court, after an 8 October 1996 hearing, granted appellees' various motions. In an oral ruling from the bench, the court stated:

As to count one, Title VII. I'm going to grant the motion to dismiss the individual employees because I think the law is clearly, it's clear to me that the suit should be brought against the employer. So I will grant a motion to dismiss with respect to each individual employee.

As to the count as to the Board of County Commissioners, I will grant their motion for summary judgment for a couple reasons. Number one, I don't think that she exhausted her remedies before the EEOC. The county was never named in that complaint. And I frankly, from reading the facts of the case, don't see the facts as counsel for defendant says that cut the mustard to warrant an allegation as claimed. As to count two, I will grant the motion to dismiss all parties, because as I see it the law requires it must be a violation of official municipal policy or custom. And I don't see any allegation or proof of that.

And as to count three, negligent hiring and retention. Section 5[-]321(b)(1) [of the Courts and Judicial Proceedings Article] grants immunity of the parties on the mere negligence basis and it's clear under the law that you've got to allege facts clearly which show the official was malicious in hiring and retention. I don't see any allegations sufficient to warrant that. And I will grant a motion to dismiss and or summary judgment in that.

As to count four infliction of emotional distress. It's got to be 1) intentional, reckless conduct, 2) extreme and outrageous[,] 3) causal connection between the conduct and the emotional distress and the emotional distress must be severe. I don't think these four counts are alleged or I don't think there are sufficient facts alleged to fulfill all four of these particular requirements, especially the extreme and outrageous part. And I will grant the motion to dismiss and or motion for summary judgment as to all parties.

As to count five declaration of rights. I think I stated it before, I don't see an abridgment of any federal rights. And I will grant a motion to dismiss and or summary judgment in count five as to all parties.

In the resolution of the case *sub judice,* we shall address the following issues:

A. Whether the trial court properly granted appellees' motion to dismiss the Title VII claim as to the individual appellees.

B. Whether the trial court properly granted the motion to dismiss the Title VII claim as to the Board of County Commissioners of Cecil County due to appellant's failure to name the Board in her EEOC complaint.

C. Whether the trial court properly granted summary judgment as to appellant's Title VII claim.

D. Whether the trial court properly granted appellees' motion to dismiss the 42 U.S.C. § 1983 claim.

E. Whether the trial court properly granted appellees' summary judgment motion on the negligent hiring/retention claim against Cecil County.

F. Whether the trial court properly granted appellees' summary judgment motion on the intentional infliction of emotional distress claim.

G. Whether the trial court properly granted appellees' motion for summary judgment as to the claim that the defendants violated her rights guaranteed by the Maryland Declaration of Rights.

## A. Dismissal of Title VII Claim as to the Individual Appellees

Appellant asserts that the trial court erred in finding that the individual appellees could not be sued pursuant to 42 U.S.C. § 2000e (1996) (Title VII of the Civil Rights Act of 1964). Title VII defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C. § 2000e(b). The federal circuit courts are currently

split on the issue of whether Title VII liability can be imposed on individuals. *Compare Williams v. Banning*, 72 F.3d 552 (7th Cir.1995); *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995); *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir.), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir.1993); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583 (9th Cir.1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *and Harvey v. Blake*, 913 F.2d 226 (5th Cir.1981) *with Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir.1989), *vacated in part*, 900 F.2d 27 (1990)(*en banc* ); *and Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir.1986).

*Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583 (9th Cir.1993), is indicative of the view that Title VII liability cannot be imposed on individuals. In that case, the court noted that some federal courts had found "that supervisory personnel and other agents of the employer are themselves employers for purposes of liability." *Id.* at 587. The *Miller* court found that the phrase "and any agent of such person" was not incorporated in the definition of employer to impose liability on individuals but to impose respondeat superior liability on the employer. It reasoned:

> The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees. Title VII limits liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b), ... in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

*Id.* Addressing the criticism that refusing to impose liability on individuals " 'would encourage supervisory personnel to believe that they may violate Title VII with impunity,' " the court stated that it believed that employers, knowing that they may be subject to Title VII liability, would take measures to correct a supervisory employee's belief. *Id.* at 588.

Also indicative of the view that individuals should not be liable under Title VII is *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995). In that case, the victim of workplace sexual harassment sued her former supervisor under Title VII. The supervisor, asserting that Title VII did not apply to him, moved to dismiss. The motion to dismiss was granted. On appeal, the Seventh Circuit affirmed. The court noted that in *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir.1995), it had held that the definition of employer that is contained in the Americans with Disabilities Act (ADA) and includes the employer's agents was "simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents." *Williams*, 72 F.3d at 553. The court further stated:

> If a victim of harassment suffers mental and emotional distress, embarrassment, and humiliation so severe that even an employer's prompt action does not provide sufficient compensation, it is not unreasonable to assume that Congress intended the victim to turn to traditional tort remedies for redress.

*Id.* at 555.

A majority of the federal circuit courts are in accord with the view that Title VII does not impose individual liability. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995) ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.1994) ("[W]e conclude that individuals who do not otherwise qualify as an employer cannot be held liable for a breach of Title VII."); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993) ("Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate.").

The Fourth Circuit has adopted a view contrary to that of the majority of the federal circuits. In *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir.1989), the court examined whether a supervisory employee could be held liable pursuant to

Title VII. The court, holding that such an employee could be held personally liable under Title VII, stated:

> An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment. The supervisory employee need not have ultimate authority to hire or fire to qualify as an employer, as long as he or she has significant input into such personnel decisions. Furthermore, an employee may exercise supervisory authority over the plaintiff for Title VII purposes even though the company has formally designated another individual as the plaintiff's supervisor.

*Id.* at 104 (citations omitted).

■ The Sixth Circuit, in dicta, has also indicated that individual employees can be held liable under Title VII. In *Jones v. Continental Corp.,* 789 F.2d 1225 (6th Cir.1986), the plaintiff brought a Title VII action alleging that her employment with the defendant company had been terminated because of her race. The district court dismissed the complaint because the complaint failed to specify under which statute (Title VII or § 1981) the individual defendants were being sued, under which statute the sex discrimination claims were brought, and under which section damages were sought. The court noted that it was clear that the sex discrimination claims were brought under section 1981. In regard to the Title VII claim, the court indicated that individual liability could be imposed.

■ Although the Fourth Circuit has imposed Title VII liability on individual employees, we are not bound by its decisions. *See Gayety Books, Inc. v. Mayor of Baltimore,* 279 Md. 206, 213, 369 A.2d 581 (1977); *Davis v. Director, Patuxent Inst.,* 29 Md.App. 705, 713, 351 A.2d 905, *cert. denied,* 277 Md. 736, *and cert. denied,* 429 U.S. 919, 97 S.Ct. 312, 50 L.Ed.2d 285 (1976); *Wiggins v. State,* 22 Md.App. 291, 302, 324 A.2d 172, *aff'd,* 275 Md. 689, 344 A.2d 80 (1975). We find the majority view taken by the federal circuit courts to be persuasive as to whether Title VII imposes personal liability on

individual employees. We perceive that the purpose of Title VII was to prompt employers that were recalcitrant in responding to allegations of workplace discrimination to take action and to impose liability when employers failed to do so. As we view it, Title VII's purpose was not to impose liability on individual employees; traditional tort remedies are sufficient to redress harm to individual victims on the part of individual employees. Moreover, not every wrong need have a judicial remedy. Incivility, repugnant as it may be, does not necessarily create a cause of action. If it did, there would not be sufficient court resources to rectify that which is uncivil. Accordingly, we shall affirm the trial court's dismissal of the Title VII claim against the individual employees.

### B. Dismissal of Title VII Claim as to Cecil County

The trial court, finding that the Charge of Discrimination filed with the Equal Employment Opportunity Commission (EEOC) did not name Cecil County, granted the county's motion to dismiss as to the Title VII claim. The employer named in the Charge of Discrimination filed with the EEOC was the Cecil County Sheriff's Department. The charge did not specifically name any of the individual appellees in regard to instances of alleged sexual harassment. It did state that on August 13, 1993, appellant had been "subjected to verbal harassment and sexual harassment from male supervisory and management officials." It also stated that appellant had been "subjected to unfair terms and conditions of employment."

Appellant argues that the trial court erred in dismissing the complaint against Cecil County due to appellant's failure to name Cecil County specifically in the EEOC charge.[3] She argues that Cecil County was clearly on notice of the EEOC charges filed against the Sheriff's Department and was not prejudiced by her failure to name it in the charge.

---

3. Because we have previously held that employees cannot be sued individually under Title VII, we do not address appellant's failure to name the individual appellees in the EEOC Charge of Discrimination. We shall only address this issue as to Cecil County.

It is unclear whether Cecil County disputes the contention that the failure to name it specifically in the EEOC charge should not bar suit against it. In their brief, appellees conclude that "the trial court correctly dismissed count I as to defendants Cole, Cleek, Abbott, Kennedy, Haggerty, Clewer, Ordway, Russell, and Christopher." Appellees do not contend that the trial court correctly dismissed the complaint against Cecil County due to appellant's failure to name it in the EEOC charge. The trial court, however, stated: "As to the count [Count I] as to the Board of County Commissioners, I will grant their motion for summary judgment for a couple reasons. Number one, I don't think that she exhausted her remedies before the EEOC. The county was never named in that complaint."[4] As the trial court clearly addressed the county's status as a proper defendant, we shall address whether appellant could bring suit against Cecil County despite her failure to name it in the EEOC charge.

## Standard of Review

## Motion to Dismiss

The general rule is that a party not named in an EEOC charge cannot be sued in a subsequent civil action. *See Alvarado v. Board of Trustees,* 848 F.2d 457 (4th Cir. 1988); *Maxey v. M.H.M. Inc.,* 828 F.Supp. 376 (D.Md.1993). This "naming requirement is designed to provide notice to the charged party and to permit the EEOC to attempt voluntary conciliation of complaints." *Alvarado,* 848 F.2d at 460.

In *Alvarado v. Board of Trustees,* the plaintiff filed an EEOC Charge of Discrimination naming Montgomery County College as his employer and then subsequently filed suit against the Board of Trustees of Montgomery Community College. The Board of Trustees moved for summary judgment on the ground that it had not been named in the EEOC

---

4. This issue was addressed by the county in a motion to dismiss. The trial court misspoke when it referred to summary judgment on this specific issue.

charge; that motion was granted by the Maryland District Court. On appeal, the Fourth Circuit reversed. It stated:

An examination of the Maryland statutes creating Montgomery Community College and conferring powers and duties on the college's board of trustees clearly reveals that the board of trustees is identical with the college itself for purposes of suits such as that brought by Alvarado. Maryland has by statute created boards of trustees and empowered them to establish and operate community colleges.

*Id.* at 460 (citations omitted).

A Maryland statute gives the Cecil County Sheriff the authority to appoint "Deputy sheriffs to perform correctional functions." Md.Code (1974, 1995 Repl.Vol., 1996 Supp.), § 2–309(i)(1)(iii)2. of the Courts and Judicial Proceedings Article (CJ). Once hired by the Cecil County Sheriff, deputy sheriffs who perform correctional functions are for some purposes "governed by the rank, salary, and benefit structures of the Cecil County personnel policy." CJ § 2–309(i)(1)(vi)1. Additionally, following a probation period, such employees are "subject to the Cecil County personnel regulations and policies in all matters." CJ § 2–309(i)(1)(vi)2. We are, however, unable to say, under the circumstances of this case, that the Sheriff's Department of Cecil County was identical with Cecil County itself.

 Nevertheless, some federal courts have adopted exceptions to the general rule that an aggrieved party may not bring a civil suit against a party that was not named in the EEOC charge. Under the "identity of interest" exception, the courts examine various factors in order to determine whether a party unnamed in the EEOC charge may be sued. The more common factors include: 1) similarity of interests between named and unnamed parties; 2) ability of the plaintiff to ascertain the unnamed party at the time of the EEOC charge; 3) notice of the EEOC charge by the unnamed party; and 4) prejudice. *See, e.g., Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235 (2d Cir.1995); *Virgo v. Riviera Beach Assocs.,* 30 F.3d 1350 (11th Cir.1994).

■ In the case *sub judice,* only the second factor weighs against the inclusion of Cecil County in this suit. There is clearly a similarity of interests between Cecil County and the Sheriff's Department in that the Sheriff's Department is funded by the county and, for Title VII purposes, many of the Sheriff's employees are governed, administratively at least, by the policies and regulations of Cecil County. Furthermore, there is some indication that the Director of the Cecil County Human Resources had knowledge of appellant's EEOC charge. Finally, there is little prejudice to Cecil County. We, therefore, conclude that the Title VII action was properly filed against Cecil County under the "identity of intent" exception. We shall reverse the trial court's granting of the motion to dismiss as to the county on this count.

### C. Summary Judgment as to Title VII Claim

In addition to dismissing the various appellees on the grounds we have previously discussed, the trial court granted summary judgment in favor of appellees on the Title VII action. It stated: "[F]rom reading the facts of the case, [I] don't see the facts as counsel for [appellees] says that cut the mustard to warrant an allegation as claimed." Appellant asserts that the trial court erred in this regard because "[a]n employer violates Title VII simply by creating or condoning an[ ] environment at work which significantly and adversely affects an employee because of gender."

In reviewing the granting of a summary judgment motion, we are concerned with whether a dispute of material fact exists. *Arnold Developer, Inc. v. Collins,* 318 Md. 259, 262, 567 A.2d 949 (1990); *Bachmann v. Glazer & Glazer, Inc.,* 316 Md. 405, 408, 559 A.2d 365 (1989); *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Markey v. Wolf,* 92 Md.App. 137, 170–71, 607 A.2d 82 (1992). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King,* 303 Md. at 111, 492 A.2d 608 (citing *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974)). "A dispute as to a fact 'relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of

summary judgment.'" *Seaboard Sur. Co. v. Richard F. Kline, Inc.*, 91 Md.App. 236, 242–43, 603 A.2d 1357 (1992) (quoting *Salisbury Beauty Schs. v. State Bd. of Cosmetologists*, 268 Md. 32, 40, 300 A.2d 367 (1973)) (emphasis in original). We have further opined that in order for there to be disputed facts sufficient to render summary judgment inappropriate "there must be evidence on which the jury could reasonably find for the plaintiff." *Seaboard*, 91 Md.App. at 244, 603 A.2d 1357.

The Court of Appeals has stated that "the proper standard for reviewing the granting of a summary judgment motion should be whether the trial court was legally correct." *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 592, 578 A.2d 1202 (1990) (citations omitted). The trial court, in accordance with Maryland Rule 2–501(e), shall render summary judgment forthwith if the motion and response show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. The purpose of the summary judgment procedure is not to try the case or to decide factual disputes, but to decide whether there is an issue of fact that is sufficiently material to be tried. *See Coffey v. Derby Steel Co.*, 291 Md. 241, 247, 434 A.2d 564 (1981); *Berkey v. Delia*, 287 Md. 302, 304, 413 A.2d 170 (1980). Thus, once the moving party has provided the court with sufficient grounds for summary judgment,

> [i]t is ... incumbent upon the other party to demonstrate that there is indeed a genuine dispute as to a material fact. He does this *by producing factual assertions, under oath,* based on the personal knowledge of the one swearing out an affidavit, giving a deposition, or answering interrogatories. "Bald, unsupported statements or conclusions of law are insufficient."

*Lowman v. Consolidated Rail Corp.*, 68 Md.App. 64, 70, 509 A.2d 1239, *cert. denied*, 307 Md. 406, 514 A.2d 24 (1986) (citation omitted)(emphasis added). With these considerations in mind, we turn to the case *sub judice*.

In *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court recog-

nized that sexual harassment could be actionable under Title VII. The two types of sexual harassment are 1) "hostile environment" and 2) "quid pro quo." The parties are in agreement that appellant's sexual harassment claim alleges "hostile environment" sexual harassment. The Supreme Court, in *Vinson*, adopted the EEOC's definition of sexual harassment as " '[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.' " *Id.* at 65, 106 S.Ct. at 2404 (citing 29 C.F.R. § 1604.11(a)(1985)). The Court went on to hold that this type of discrimination could be actionable if it creates a hostile or abusive work environment. The Court later examined the factors that needed to be considered in determining whether the conduct was actionable in *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), first addressing what was not actionable. It stated:

> "[M]ere utterance of an ... epithet which engenders offensive feelings in an employee," ... does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. ...
>
> .. . . .
>
> ... But we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive.

*Id.* at 21–22, 114 S.Ct. at 370–71.

■ Of the specific allegations of gender discrimination enumerated by the appellant, only one incident could remotely

constitute sexual harassment as defined by the Supreme Court. As we have previously noted, sexual harassment is defined as " '[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.' " *Vinson,* 477 U.S. at 65, 106 S.Ct. at 2404. Appellant does not make any allegations regarding sexual advances or requests for sexual favors. Additionally, most of the verbal conduct was not of a sexual nature. Appellant does allege that, while working in the dining hall area on 25 December 1991, Corporal Christopher stated: "I don't need you in here. Go sit in booking and look nice." While this remark may be gender relevant, we simply do not perceive it to be of a "sexual" nature, at least to the degree discussed in *Vinson, supra.*

■ Appellant urges this Court to adopt the view that

[i]t is not necessary to a successful Title VII claim that the Plaintiff adduce proof of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature. All that is necessary is that the Plaintiff show some proof that the employer either created or condoned an environment which significantly or adversely affected the Plaintiff because of her sex.

We decline to take such an expansive view. We hold that in a Title VII claim based on allegations of sexual harassment, the plaintiff must sufficiently assert that the offensive conduct was of a sexual nature. Any allegations of disparate treatment of a person based on his or her gender can be adequately addressed in a Title VII claim asserting gender discrimination.

The trial court properly granted summary judgment on appellant's Title VII claim alleging discrimination based on sexual harassment. We shall next address appellant's allegations of disparate treatment based on her gender.

■ In addition to alleging sexual harassment, appellant asserted that she "has been subjected to different terms, conditions, and privileges of her employment on the basis of her sex." An examination of the federal court decisions reveals that the threshold issue is whether the complaining

individual was treated differently because of his or her gender. This is referred to as discriminatory intent.

Although the county can provide a nondiscriminatory basis for some of the alleged instances of disparate treatment, it is unable to do so, in this summary judgment context, for the vast majority of them. Appellant alleged that she was required to undergo an interim evaluation while no male employees were required to do the same. She also alleged that when she received a notice to report for jury duty, a number of her superiors called the trial court judge in order to ascertain that no conflict of interest existed and that such calls were never placed for male employees. Appellant alleges numerous instances of disparate treatment in the work shifts and type of work assigned, and the treatment she received in regard to male personnel similarly situated.

We hold that appellant made sufficient allegations of gender discrimination based on disparate treatment to defeat summary judgment. Accordingly, the trial court erred in granting summary judgment on appellant's Title VII gender discrimination claim.

### D. Dismissal of § 1983 Claim

Appellant, after realleging the allegations in respect to her Title VII claim, asserted in her complaint that the appellees had violated § 1983 by "depriv[ing] plaintiff of rights secured by Title VII of the Civil Rights Act of 1964 ... and by the First Amendment, the Equal Protection Clause, and the Due Process Clause of the United States Constitution." In dismissing appellant's § 1983 claim as to all appellees, the trial court held that appellant had not alleged what law, policy, or custom had caused the constitutional deprivation.

Section 1983 of Title 42 of the United States Code, in pertinent part, provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Court of Appeals noted in *Ritchie v. Donnelly,* 324 Md. 344, 597 A.2d 432 (1991), that federal law had developed a distinction between a § 1983 action brought against a public officer or employee in his or her "official capacity" and an action brought against a public officer or employee in his or her individual capacity. It noted that "[t]he capacity in which a public officer or employee was acting when the alleged deprivation of a federal right occurred determines, to some extent, what a plaintiff must prove in order to establish liability, what defenses are available to an officer or employee, and what is the nature of any liability imposed." *Id.* at 354, 597 A.2d 432.

■■■ The first issue that we must examine is whether the individual appellees, in their official capacities, were state or local government officials for purposes of § 1983. This distinction is important in that "[w]ith regard to an action for money damages, neither a state nor a state agency nor a state official *sued in his official capacity* is a 'person' within the meaning of § 1983." *Id.* at 355, 597 A.2d 432. Accordingly, a suit for money damages against a state, state agency, or state official sued in his official capacity may not be maintained.

■■■ On the other hand, local governments and local government officials or employees acting in their official capacities are "persons" within the meaning of § 1983. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Ritchie,* 324 Md. at 356, 597 A.2d 432. Therefore, a suit for money damages pursuant to § 1983 may be maintained against local governments and local government officials or employees acting in their official capacities.

Appellant alleged in the case *sub judice* that various members of the Cecil County Sheriff's Department discriminated against her on the basis of gender. As noted above, if the Sheriff and his employees are State officials, appellant is

precluded from bringing this claim against the State. If, however, the Sheriff and members of his staff are local officials, then appellant is not precluded from bringing suit under this section against Cecil County. This determination is far from clear. In *Rucker v. Harford County*, 316 Md. 275, 280, 558 A.2d 399 (1989), the Court of Appeals held that under Maryland law, a sheriff is a state official. The Court in *Ritchie* stated:

> While, under Maryland law, a sheriff is a state official, the state law classification is not dispositive for purposes of § 1983. *See Rucker v. Harford County*, 316 Md. 275, 280, 558 A.2d 399 (1989); *Clea v. City of Baltimore*, 312 Md. [662,] 670 n. 5, 541 A.2d 1303 [ (1988) ]; *Dotson v. Chester*, 937 F.2d 920, 926–927 (4th Cir.1991). The courts have recognized that, for purposes of § 1983, a sheriff may sometimes be treated as a state official and sometimes as a local official, depending upon the particular function which the sheriff was performing. *Dotson v. Chester, supra; Parker v. Williams*, 862 F.2d 1471, 1479 (11th Cir.1989); *Soderbeck v. Burnett County, Wis.*, 821 F.2d 446, 451 (7th Cir.1987). Recently in *Dotson v. Chester, supra*, 937 F.2d at 927, the United States Court of Appeals for the Fourth Circuit suggested that a Maryland sheriff may be a state official under § 1983 while engaged in the law enforcement activity of attempting to arrest a suspected lawbreaker, but the Court of Appeals [for the Fourth Circuit] held that, in operating a county jail, the sheriff was a local government official for purposes of § 1983.

*Ritchie*, 324 Md. at 357, 597 A.2d 432. We are not completely persuaded that the Court of Appeals has, in fact, adopted the view, "suggested" by the Fourth Circuit, that a sheriff may act as a local government official. Nevertheless, because the parties have assumed, in their briefs and at the hearing below, that the individual appellees were local officials for purposes of § 1983, we shall resolve the § 1983 claim as if they were.

The Supreme Court in *Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), held that "[l]ocal governing bodies . . . can be sued

directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." The Court cautioned, however, that the local governments were not liable under a theory of respondeat superior but instead "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38. In *Frye v. Grandy*, 625 F.Supp. 1573, 1577 (D.Md.1986), the Federal District Court for the District of Maryland noted the standard of review in these types of cases:

A complaint will withstand a motion to dismiss only if the facts alleged, together with reasonable inferences drawn from them, could lead a reasonable factfinder to conclude that the actions of the government employee were the product of some official policy or custom.

Appellant alleges in her complaint that despite actual knowledge of the discriminatory conduct, appellee Kennedy "failed to take appropriate disciplinary action and remedial action, and instead sanctioned and ratified the discriminatory conduct." She further asserts that "despite actual knowledge of [appellees'] discriminatory conduct . . . against women, [appellees] Kennedy [and] Cecil County . . . elected not to take any remedial action, and instead, simply ignored the whole matter. By that inaction, [appellees Kennedy and Cecil County] sanctioned and ratified the illegal conduct of [appellees]."

 In a plurality opinion, the Supreme Court indicated that § 1983 liability can be imposed on a local government for a single act when the local official was responsible for implementing a policy or custom that led to a deprivation of constitutional rights. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Liability may also be imposed when local government officials refuse to carry out stated policies.

Refusals to carry out stated policies could obviously help to show that a [local government's] actual policies were different from the ones that had been announced. If such a showing were made, we would be confronted with a different case than the one we decide today.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 131, 108 S.Ct. 915, 928, 99 L.Ed.2d 107 (1988).

It is clear that neither Kennedy nor the Board of Commissioners, the parties responsible for the county's employment policy, actively took part in the alleged discriminatory conduct so that their actions could be considered an adoption of a policy or custom. Had appellant alleged that the Sheriff or the Board of County Commissioners were responsible for implementing the policy of alleged discrimination in the Cecil County Sheriff's Department, liability might be imposed against the county for that reason. *See, e.g., Johnson v. Ballard*, 644 F.Supp. 333 (N.D.Ga.1986) (holding that county was proper defendant where the sheriff of the county took part in the sexual harassment and gender discrimination directed toward the plaintiffs).

While appellant made no allegation that the persons vested with implementing official policy took affirmative steps to adopt discriminatory policy, she seeks to impose liability on the county based on *its failure to act* when its official policymakers had, according to her, knowledge of gender discrimination directed not only at appellant but also at other female employees of the Cecil County Sheriff's Department. Although this may or may not be true, appellant has sufficiently alleged inaction on the part of Kennedy and the Board of Commissioners, despite their alleged knowledge of gender discrimination, such that she may be able to show "that a [local government's] actual policies were different from the ones that had been announced." *Praprotnik*, 485 U.S. at 131, 108 S.Ct. at 928. Accordingly, the trial court erred when it dismissed appellant's § 1983 action on the basis that appellant had not sufficiently alleged or proven an official policy or custom on the part of the county.

### E. Summary Judgment as to Negligent Hiring/Retention Claim

Appellant's complaint alleged that "Defendant Cecil County owed plaintiff a duty in the hiring and retention of employees." She alleged that the County breached that duty in hiring and retaining certain officers who discriminated on the basis of gender and that the county "undertook the acts alleged herein with actual malice." The trial court granted appellee's motion for summary judgment as to this count. It held that section 5–321(b)(1) of the Courts and Judicial Proceedings Article "grants immunity [to] the parties on the mere negligence basis and it's clear under the law that you've got to allege facts clearly which show the official was malicious in hiring and retention." We agree. The facts alleged do not constitute a sufficient averment of malice to withstand the county's claim of immunity.[5]

In *Manders v. Brown*, 101 Md.App. 191, 216, 643 A.2d 931 (1994), after quoting section 5–321(b)(1) of the Courts and Judicial Proceedings Article, we stated:

> In this context, malice "consists of the intentional doing of a wrongful act without legal justification or excuse. An act is malicious if it is done knowingly and deliberately, for an improper motive and without legal justification." Furthermore, the mere assertion that an act "was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive" is not sufficient. "To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious." [Citations omitted.]

*See also Williams v. Prince George's County*, 112 Md.App. 526, 550–51, 685 A.2d 884 (1996).

Appellant has failed to show any facts that, if proven, can establish malice on the part of Kennedy or the individual

---

**5.** The parties have not raised the issue of which waiver of immunity statute applies. Because the parties presume section 5–321(b)(1) is the appropriate statute, we shall also so presume that it is, although we do not so hold.

members of the Board of Commissioners of Cecil County. She has failed to allege sufficiently that the Sheriff of Cecil County or the Board hired or retained individuals for the purpose of deliberately discriminating against her. Accordingly, the trial court properly granted summary judgment on the negligent hiring/relation claim.

While we shall affirm this aspect of the trial court's ruling for the reasons stated by the trial court, we note that its grant of summary judgment on this issue was also correct for another reason. Although appellant has not named the former individual members of the Board of Commissioners of Cecil County, Kennedy, the former Cecil County Sheriff, or any of the other individual appellees in this count, she seeks to impose liability on the county for negligent hiring and retention. In order to establish a claim for negligent hiring or retention, a plaintiff must prove that the employer of the individual who committed the allegedly tortious act owed a duty to the plaintiff, that the employer breached that duty, that there was a causal relationship between the harm suffered and the breach of the employer's duty, and that the plaintiff suffered damages. *See Cramer v. Housing Opportunities Comm'n,* 304 Md. 705, 712–14, 501 A.2d 35 (1985). Accordingly, in order for Cecil County to be liable for negligently hiring or retaining the various members of the Cecil County Sheriff's Department, appellant was required to prove that the county had the authority to hire and retain these persons.

Section 2–309(i)(1)(ii) of the Courts and Judicial Proceedings Article gives the Cecil County Sheriff the authority to appoint and remove the Detention Center Director and Detention Center Deputy Director. Similarly, section 2–309(i)(1)(iii) gives the Sheriff of Cecil County the authority to appoint deputy sheriffs to perform correctional functions. It is clear that the alleged wrongful acts were committed by persons who were not hired by the County but were appointed by the Cecil County Sheriff. Cecil County had no direct power or authority to interfere in the hiring of the Chief Deputy Sheriff, the

Detention Center Director, the Deputy Detention Center Director, or any other correctional facility personnel.

The negligent hiring/retention claims are state actions and are thus controlled by state law, anything in *Dotson v. Chester, supra,* notwithstanding. While in § 1983 actions the Fourth Circuit may have opined that a sheriff, when operating a jail, is a local official, for Maryland actions Maryland law controls. Under it, sheriffs and deputy sheriffs are not county employees but are State officials or employees.[6] In *Rucker v. Harford County,* 316 Md. 275, 277, 558 A.2d 399 (1989), the United States District Court for the District of Maryland certified the following issue to the Court of Appeals: "Whether the Sheriff or Deputy Sheriffs of Harford County are employees of the State of Maryland or of Harford County[.]" *Rucker* involved the participation of Harford County Deputy Sheriffs in a high speed chase that ultimately concluded with the accidental shooting of the plaintiff. The plaintiff asserted claims for negligence and for violations of his constitutional rights under 42 U.S.C. § 1983. The Court ultimately, for certain purposes, concluded that "under Maryland law, sheriffs are State officials and/or employees." *Id.* at 289, 558 A.2d 399; *see also Boyer v. State,* 323 Md. 558, 572, 594 A.2d 121 (1991). The mere fact that they might also be subject to administrative practices applicable to county employees, or that their salaries may be paid through the county budget, does not alter their identity as state officials. We see no reason why, in negligent hiring and/or retention tort actions, they would not be considered state employees under the circumstances here present.

We shall affirm the trial court's judgment on this issue.

### F. Summary Judgment on Intentional Infliction of Emotional Distress Claim

■ In *Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (1977), the Court of Appeals recognized the tort of intentional inflic-

---

6. Appellant initially named the State of Maryland as a defendant in the instant suit but later voluntarily dismissed the suit as to the State.

tion of emotional distress. In order for a plaintiff to recover for intentional infliction of emotional distress, he or she must satisfy the following elements:

(1) The conduct must be intentional or reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress;

(4) The emotional distress must be severe.

*Id.* at 566, 380 A.2d 611.

The trial court granted summary judgment in favor of appellees on appellant's intentional infliction of emotional distress claim. It reasoned: "I don't think these four counts are alleged or I don't think there are sufficient facts alleged to fulfill all four of these particular requirements, especially the extreme and outrageous part."

The Court of Appeals stated in *Batson v. Shiflett,* 325 Md. 684, 734, 602 A.2d 1191 (1992):

For conduct to meet the test of "outrageousness," it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Whether the conduct complained of meets this test is, in the first instance, for the court to determine; in addressing that question, the court must consider not only the conduct itself but also the "personality of the individual to whom the misconduct is directed." This high standard of culpability exists to screen out claims amounting to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that simply must be endured as part of life. [Citations omitted].

The *Batson* Court noted that it had upheld claims for intentional infliction of emotional distress only on three occasions. In one of the those cases, *Figueiredo-Torres v. Nickel,* 321 Md. 642, 584 A.2d 69 (1991), the Court upheld a claim for intentional infliction of emotional distress by a plaintiff whose psychologist was having sexual relations with the plaintiff's

wife. With regard to the severity of the conduct, the court focused on the relationship between the plaintiff and defendant and stated:

> [A] jury may find extreme and outrageous conduct where a psychologist who is retained to improve a marital relationship implements a course of extreme conduct which is injurious to the patient and designed to facilitate a romantic, sexual relationship between the therapist and the patient's spouse.

*Id.* at 654, 584 A.2d 69.

The Court of Appeals also upheld a claim for intentional infliction of emotional distress in *B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988). In that case, the defendant failed to disclose to the plaintiff with whom he was having sexual relations that he had active genital herpes. The plaintiff alleged that she had contracted the incurable disease from the defendant after engaging in sexual intercourse with him. In regard to the element of extreme and outrageous conduct, the Court noted that "the characteristics of the illness ... support the extreme and outrageous nature of [the defendant's] conduct." *Id.* at 144–45, 538 A.2d 1175. Some of the characteristics associated with genital herpes included extreme pain, development of cervical cancer, and problems with childbearing.

In *Young v. Hartford Accident & Indem. Co.*, 303 Md. 182, 492 A.2d 1270 (1985), the plaintiff was assaulted at work and suffered physical and emotional trauma as a result of the assault. She received disability payments for a period of time from the defendant, her employer's workers' compensation carrier, and remained under the care of Dr. Peck. The defendant refused to pay a portion of Dr. Peck's bill and insisted that the plaintiff undergo another psychological evaluation despite warning from Dr. Peck of the plaintiff's fragile condition. Following a second evaluation by a psychiatrist chosen by the defendant, the defendant refused to pay the plaintiff's medical bills. A few days later, she attempted suicide. The plaintiff ultimately brought suit against the

defendant for intentional infliction of emotional distress. The Court held that "[i]f [the plaintiff] proves that 'the sole purpose of Doctor Henderson's examination was to harass the Plaintiff into abandoning her claim, or into committing suicide,' a jury could find that that proof meets all of the elements of the tort as set forth in *Harris*." *Young,* 303 Md. at 198–99, 492 A.2d 1270.

We recently denied a plaintiff's claim for intentional infliction of emotional distress in *Miller v. Ratner,* 114 Md.App. 18, 688 A.2d 976 (1997). The plaintiff, who was living with one of the defendant's in his home, alleged that she and the defendant had entered into a contract to marry. After the plaintiff underwent treatments for breast cancer and while she was still ill from these treatments, the defendant repeatedly woke her in the middle of the night and admonished her to leave his home. The defendant's brother called her a "bitch," "whore," and a "one breasted woman." The defendant told the plaintiff that she was a financial burden and that she was going to die. The plaintiff was also threatened with bodily harm if she did not vacate the defendant's home. We ultimately held that "[c]onsidering that the [defendant] had the legal right to require [the plaintiff] to leave, we do not perceive the[ ] verbal actions alone to be, as nauseating as they are if true, of such egregiousness so as to satisfy the elements of the tort." *Id.* at 59, 688 A.2d 976.

The case *sub judice* does not involve a special relationship between appellant and appellees as there was in *Figueiredo–Torres v. Nickel.* Appellees' conduct did not result in any physical manifestation that would be sufficient to show the outrageousness of the conduct as in *B.N. v. K.K.* Furthermore, there were no allegations that appellees were aware of or that appellant was in a fragile emotional state as in *Young v. Hartford Accident & Indem. Co.* Additionally, appellant has not alleged or given any proof of physical conduct of a sexual nature directed toward her. The conduct appellant complains of was strictly verbal, some of which was not even directed at her. We agree with the trial court that

appellant failed to show that appellees' conduct was of such an extreme and outrageous nature as to satisfy the elements of the tort of intentional infliction of emotional distress.

### G. Summary Judgment on Maryland Constitutional Claims

■■■ We have previously held that appellant has properly stated a claim for and provided evidence tending to show that the county discriminated against her because of her gender. She has therefore properly asserted a claim under Article 46 of the Maryland Declaration of Rights.

### Conclusion

The dismissal of Title VII claims is affirmed as to the individual defendants and reversed as to the Board of County Commissioners. The motion for summary judgment as to the Title VII count is also reversed as to the Board of County Commissioners. The result of our holdings on the Title VII count is that the individual defendants are dismissed; the Board of County Commissioners remains as a defendant under this claim.[7] The dismissal of the § 1983 claim is reversed and that claim may proceed to the next stage against all defendants. The summary judgments granted on appellant's claims for intentional infliction of emotional distress and negligent hiring/retention are affirmed. Summary judgment on the Maryland constitutional counts is reversed without prejudice to the individual appellees to raise standing issues.

DISMISSAL OF TITLE VII CLAIM AS TO INDIVIDU-AL APPELLEES IN THEIR INDIVIDUAL CAPACITIES IS AFFIRMED; DISMISSAL OF TITLE VII CLAIM AGAINST THE BOARD OF COMMISSIONERS OF CE-CIL COUNTY IS REVERSED; SUMMARY JUDGMENT AS TO TITLE VII CLAIM IS REVERSED AS TO THE

---

7. We note that appellant's Title VII claim should be limited to proof regarding disparate treatment on the basis of her gender. As we have indicated, appellant has not made out a claim of sexual harassment in that the conduct complained of was not of a sexual nature.

BOARD OF COUNTY COMMISSIONERS; DISMISSAL OF 42 U.S.C. § 1983 CLAIM IS REVERSED; SUMMARY JUDGMENT AS TO THE NEGLIGENT HIRING/RETENTION CLAIM IS AFFIRMED; SUMMARY JUDGMENT AS TO THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IS AFFIRMED; SUMMARY JUDGMENT AS TO MARYLAND CONSTITUTIONAL CLAIMS IS REVERSED; COSTS TO BE PAID ONE-HALF BY APPELLANT AND ONE-HALF BY APPELLEES.